The panel has before it today three cases, but before calling the list, the court wishes to recognize and thank Judge Robert Gettleman from the U.S. District Court for the Northern District of Illinois, who yesterday and today has volunteered to supplement our judicial ranks and sit on panels, including this one. Judge Gettleman, thank you so much for your generosity and your help here. Thank you very much for having me. One of our cases today will be submitted later today on the briefs without benefit of oral argument, that is Sanchez v. Merit System Protection Board, which is Appeal 3279 from 2008. We'll hear oral argument this morning in two cases, the first of which is Appeal 1249 from 2008, Zipwall v. Fastcap. Mr. Lowery, good morning to you. Welcome to the court. Please proceed. Thank you, Your Honor. We have reserved five minutes for rebuttal. I'd like to introduce the court to Mr. Lippman, who's made an appearance in the case, but also Mr. Jeffrey Whittemore, who is the named inventor on the patent, the founder and chief executive officer of Zipwall. The issues on appeal in this case, Your Honor, there are, I suppose, four. On the opening, on the appeal, there's the question of infringement of the 615 patent. That question in turns entirely on claim construction, which is whether a compression mechanism biased occurs. You can assume we've carefully read the brief, so you really should get right to your core contention on appeal of why there was reversible error in the claim construction. Okay. With respect to the claim construction, for the plain meaning of the term, as actually Fastcap, the defendant, argued to the district court, there is not quite a plain meaning if the claim is looked at in the abstract and separate from the specification, which, of course, the court wouldn't do. But the plain meaning does happen to be consistent with the proposed construction of Zipwall, which is something that generates a compressive force in the pole. You're going to have to help me, because it looked to me like this patent covers springs and spring-like pneumatic mechanisms and not mechanisms of a more rigid, mechanical sort that could be compared by a layperson like myself with a car jack assembly. And it looks to me like unless it covers a jack-type assembly, the 615 patent can't possibly be infringed by the accused product. But, Your Honor, and that's the point, it should and must be interpreted, given the specification, to cover exactly that type of embodiment for a few reasons. First, there are alternative embodiments in the specification that says it's not just a spring, but it includes hydraulic and pneumatic mechanisms, and those would not be springy things. Why do you say that? It seems to me they're precisely springy things. In the context of this patent, there is absolutely, in fact, Your Honor, on appeal, Fastcap, and in front of the district court, Fastcap never argued that pneumatic devices or hydraulic devices would be springy. The only thing that was in front of the district court was the testimony from Professor Slocum, who said, in the context of this application, I believe that this would cover things that are not springy. Was there any- I don't care what some professor says. This patent is so clear as to the nature of the subject matter that you're going to have a very hard time convincing me that it covers things other than spring and spring equivalents. But precisely what the specification says is, for these things to work, all they need to do is generate something, a force in the pole that causes tension. That's all that's required. And so when they disclose a spring, that is one way to do it. But they disclose alternatives. They don't say springs or spring-like devices. The specification says springs- Yeah, but to win on this, you have to convince us that a jack-type mechanism is a compressive mechanism. That just seems to me almost absurd on its face. It is- A spring is compressive, whether it's a metal spring or a pneumatic device. But a car jack is not a compressive mechanism in any kind of understanding of the words that I can adhere to. In the context of this patent, Your Honor, which under Phillips is exactly what we should be looking at, it is a compressive mechanism because a compressive mechanism is something that generates a compressive force in the pole to hold it in place. That's precisely the way that the patent uses those terms. It talks about a compressive force in the pole using the word compressive. So the mechanism, the compressive mechanism, is something that generates the compressive force. And again, that is exactly the way the words are used in the specification, and it is consistent with having alternatives to springs in the disclosed embodiments. I mean, the specification is very clear. It says, yes, a preferred embodiment, the preferred embodiment, is a spring. But it is also very clear- No one is suggesting that you're limited to springs. The issue is whether, in addition to springs, you get every kind of device that when it can be adjusted to apply upward force. That is correct, Your Honor. That is exactly what the claim was intended to cover. Something that a mechanical- Well, it doesn't matter to us what the claim was intended by the inventor to cover because we're limited to what the public was put on notice was within the bounds of this claim. It looks to me quite clear that the public was put on notice that spring-like mechanisms are covered and things that don't operate like a spring are not covered. Quite the contrary, Your Honor. The public was put on notice that the applicant was calling something that generates a compressive force in the pole a compressive mechanism. The applicant was defining the term by the way it was being used. And if that weren't sufficient, the applicant goes on to say compression mechanism includes springs and not pneumatic springs and hydraulic springs, but pneumatic mechanisms and hydraulic mechanisms. And those things are not expected in this context to be springy. This isn't a car. They can be or they cannot be. They can go both ways. And there is nothing in the- Well, I don't know that that's true and I don't know that a person of ordinary skill in the art in this context would think that a hydraulic shock absorber of some kind would be suitable to generate that kind of springiness. If it's something that works in a car, it's going to poke a hole through the- Well, let me just go to language that seems to me to be the key language here. Because it isn't just compression. You say a compression mechanism biased to urge said head away from said interface. Doesn't that require some sort of restoring force in order to hold this thing in place? Not a springy restoring force, no, Your Honor. There is some spring in the pole inherently, which is why these things work. It's not like this doesn't work to hold a partition in place. When you crank the thing up, it generates a compressive force in the pole causing a little bit of bow, and it doesn't require springiness. And that ratchet, when you ratchet it, or that hydraulic pump or the jack, when it pushes it up, is going to be pushing it up and away from the interface when it's in place, just as the ceiling is pushing down. But what does compress mean to you? Compress means to squeeze, doesn't it? Compress means to squeeze. And by the way- Okay, wait a minute. Let me just stop you. If all you're doing is squeezing, it's not going to hold anything up. You're just going to squeeze it down and it's going to fall. So you need to go the other way. And in this particular claim, you're going the other way automatically because the compression mechanism is biased to urge the head away from the surface. And as Judge Michel said, in anybody's definition of the term, that's a spring-like mechanism, which is exactly what the district judge concluded. Not at all, Your Honor, because even with these jack-type devices, whether hydraulic, ratchet, or anything else, you can't compress it. You hit the button and you compress it. The pole gets short. And then you jack it back up and it goes back up. So it can operate in exactly the way of a spring. The only difference being that the compression mechanism is either automatic with the spring when you release it, or you compress the pole and then you ratchet it back up and generate the compressive force in the pole to hold it in place. In both, the motion of the pole is going to be identical. But you're talking about compressing it in the infringing device when you're taking the unit down. And isn't it clear from the specification in the language that what we've got here is the invention, is to set it in place? That is correct, Your Honor. And for that reason, again, it covers both springs and these mechanical ratcheting devices. The compression, if you say compressing, doesn't that mean getting shorter? Yes. And they do both get shorter. If you're talking about generating the compressive force when it's installed, both of those mechanisms do that by being activated to push the head towards the ceiling. And they both result in the same thing, which is a pole that's being held in place. And so is there any expandable device that would not be covered by your definition of the claim terms? No, not a mechanical assembly that would generate a compressive force in a pole would be covered no matter what form, unless there's something that I'm not aware of. But yes, there is. So where's the invention in that? It's with the rest of the claim, Your Honor. We're not just talking about this one limitation. There are a number of limitations. This was really a remarkable product, Your Honor, and it's been copied all over the place,  And what happened is the inventor found, in fact, Your Honor, the 004 patent on which Judgment had entered doesn't require a compression mechanism. The 076, which had been dismissed out, doesn't even require expansion of the pole, right? There are a lot of things. And what used to happen is like what was shown with the 2x4s in the briefing, was that you'd add a piece of plastic and you'd jam something in there. There wasn't an assembly to do it. And what the inventor did was they found this clip that you can put on. It's better than jamming the plastic up against the ceiling because it creates additional friction up there. So you don't have the plastic up there. You don't have to poke a hole in the plastic. There's a lot about this invention that's innovative. It's not all about the compression mechanism. The only reason we're talking only about the compression mechanism is that's the only limitation that wasn't met. But that's not the invention. The invention is the claim as a whole. Do you want to talk about the 004 patent? Yes. Thank you, Your Honor. For the 004 patent, the claim says a plurality of legs extending from at least one side. And the district court found, we believe correctly, that it shows it covers a leg coming off of the other side. The defendant argues that it should require two legs off of the same side. And that's the issue in a nutshell. There's nothing in the claim. In fact, in the briefing, FASCAP admits that the grammatically correct construction of this term is what the district court found. And where were we left with that issue? You waived damages in the absence of a remand. Yes, Your Honor. But you're seeking an injunction? And we're seeking an injunction. And that's the issue on appeal for that one from our side. With respect to the injunction, there's no question that the parties are direct competitors. We have an affidavit from Mr. Whittemore. Silence from the defendant on the affidavit. But I thought, wasn't it stipulated or agreed that the product was no longer on the market? The product is no longer on the market. But that simply takes the two factors of balance of harms and public interest and makes them totally in favor of an injunction. And if you look at the reply brief for the defendant, they say, well, we've designed around so it's highly unlikely we're going to start selling it again. That's why we need an injunction. It's not impossible. And we are entitled to an injunction against a direct competitor who's the only other person who sells through a significant channel. Holds what case? I'm sorry? Holds what case that you're entitled to an injunction because the opposing party is a competitor? Well, there's a couple. One is the concurring opinion in the eBay case said we should look to our historical precedent. And even after the eBay case, we have been unable to locate a single instance where there's been a direct competitor who's been denied an injunction. Your direct competitor is on Amazon.com. There's other ways I assume that these products are marketed, right? Well, yes, including by the defendant. It just happens to be that we can, in this case... It's not a two-player market as you implied in your brief. It's only a two-player market on Amazon. But in the broader marketplace, there are lots of people who make these competing products. And they're all small regional suppliers. They're the only significant large national retailer out there that sells this kind of a device as evidenced by the fact that it's on Amazon.com as well as elsewhere. Is it true that they stopped selling, offering to sell, using, making, et cetera, this device the month that the complaint was filed back in 2005, so we've gone almost four years with no infringing activity whatsoever? We don't know that, Your Honor, because we never actually had discovery in this case. But even if that were true, your argument seems to be that that gives you more of a reason to have an injunction rather than less. And I'm not understanding that rationale. I agree that it's more reason for an injunction. I mean, what's the harm to the defendant? Why are they fighting this so hard if they're not going to go back and do it again? Isn't our standard of review highly deferential in a case like this? Yes and no. It's abuse of discretion unless the court committed legal error. And in our briefing, we identified several things that we thought were legal error, including that the court said, I require quantification of lost sales. Well, if you can't quantify lost sales, that actually supports a factor. He wanted to know what the market was here to see whether or not an injunction should issue. Isn't that what most judges do when they balance the equities and whether to issue an injunction? Well, the only evidence that was presented to the district court to weigh and balance was the affidavit of Mr. Whittemore. And there's no reason to doubt his statement that they are direct competitors. Yeah, but I don't understand what that gets you. Okay, they're direct competitors. They compete like crazy. They've been direct competitors. Maybe they're the only two competitors. So what? Why does that entitle you to an injunction? I don't get it. I don't understand. Frankly, Your Honor, I don't think that's the right to exclude that a patent gives. And frankly, when would you ever get an injunction if this were not a circumstance where one would be granted, which is why every decision— Well, you'd get one if you really needed it, like if they were still doing it. No, injunctions often grant when a competitor has stopped. But then there are decisions that say that's actually even more of a reason because what's the harm to the defendant? I'm down to 50 seconds, Your Honor, if I may reserve at least that time for rebuttal. We'll give you a little bit of time, three minutes for rebuttal. Let's hear from Mr. Cronin. Good morning. May it please the Court. My name is Mike Cronin and I represent FASTCAT. As you know, this case involves three patents. And I'm not going to bore you with a summary of the arguments and the materials that have already been presented in the briefs and in the appendix. Is your position predicated on the fact that a hydraulic device can be spring-like? Our position is that an awful lot is being made of hydraulics and pneumatics, but our poll doesn't have either a hydraulic or a pneumatic. Do you understand? I mean, I don't know if I'm responding properly. Well, it seems to me, so your answer is that even if the reference to hydraulic and pneumatic devices in the specification do not include spring-like devices, you wouldn't be infringing in any event. Right, because we don't have a... But the Court's claim construction did not say that, right? I don't think that, as I read the Court's claim construction, it didn't allow for non-spring-like hydraulic devices. It assumed that those devices would be spring-like, right? That's correct. The equivalent of a spring, yes. And so, back to my question, which is, do you have an example of a hydraulic... Is it possible for a hydraulic device to be spring-like and was there any evidence of that in the record? The passing references to hydraulic and pneumatic within the prosecution history and the specification are nonexistent, essentially. They just reference the hydraulic and pneumatic. Within the context of the claims and the patent history and specification, a springiness is required. And so I guess like a hydraulic on a car, a shock absorber, that sort of thing is springy. It goes up and down. I think one of the reasons it hasn't been discussed for why this thing needs to be springy is that somebody standing on the floor can adjust the fit of a curtain by pulling down on the springiness, releasing the curtain, pulling it, and then letting it go, and it pins the curtain up against the ceiling again. So it has to have that springiness in order to make that sort of an adjustment. And I think that's pretty clear from the written description and drawings. But compression, what does compression mean to you? I think squeezing. Something that gives a squish. So the patent was issued on a compressive device and all it requires is the squish. But it must be biased to urge the head away as well. And you'll see in the drawings there's an F, a force with an arrow pointing up. And I believe that's the significance of the compressive mechanism, is that it has that springiness or restoration or restorative quality to it. If we were to reverse the district court's claim construction here, do you still have invalidity claims that were not reached? We had, as Mr. Lowry had pointed out, discovery was never fully explored in the case. So we didn't have an opportunity to fully explore validity and invalidity. And I guess we would like the opportunity to do that in the event of a remand. Were they listed as defenses? I'm sorry? Were they included as defenses, counterclaims? I believe they were, yes, as a counterclaim. They're not still pending, I hope. No. I'm... No, I don't believe that. I don't think the district judge had to reach them, having construed it the way he did. That's correct, Your Honor. Yes, that's correct. You're an opponent. I'm sorry. I wanted to just quickly address kind of a threshold issue here, and that is whether or not there's jurisdiction before the court, whether there was a final judgment entered by the district court or not. I think because of the damages question remaining with the 004 patent and then damages and infringement on the 076 patent, that there is a question as to whether or not that is a final judgment. I know that the plaintiff had conditionally waived, without prejudice, its right to go after damages on the 004 patent, but that seems to me to be kind of an illusory waiver and not sufficient to establish a final judgment in the case. But there was a denial of an injunction, so they would be able to bring it here under 1292. Yes, sir. In terms of the 615 patent, I also wanted to point out the court, I think, has a good grasp of that patent. One of the issues that the appellant has raised is that this compressive force is nothing more than the force created in a pole that's put under tension. And I'd like to just point out that that was actually disclaimed during the prosecution history of the patent, where the patentee had deleted the words when under compression in order to obtain issuance of the claim, allowance of the claim. That amendment, by the way, to the 615 patent claims is reproduced at page 187 of the parties joint appendix. And you can see that when under compression was deleted from the claim. Therefore, I believe that the appellant is stopped under prosecution history is stopped from claiming the definition that it asserts now. If we were to adopt the plaintiff's construction of claim number one, do you agree that the accused device would infringe? I would have to go back and do a complete analysis of the claim. We felt at the time that because we had this clear absence of a compression mechanism that it would be simple enough to get some re-judgment by showing lack of that element in our poll and so that the rest of that claim had not gone into in much detail. Was it just a literal infringement claim? No DOE? They, excuse me, the appellant did not argue a doctrine of equivalence, but we dealt with it in defense. Essentially, our device couldn't be an equivalent because it was missing an element of the patent claim. Now you're cross-appealing against the finding of infringement of the second patent, the 004 patent? Yes, Your Honor. What's your argument there? The plain meaning of the language of plurality of legs must extend about at least one side. It seems to me that two or more must extend on at least one side. The district judge disagreed with us and felt that it could be a plurality which was two and that those two could be even one on either side of the clip. What's wrong with that? Well, I think it bumps right into the prior art patent of Villavesas that was cited during prosecution of the patent application. Well, that's a validity issue. That's not a claim construction problem then. Well, my sense is that you can't construe the clip of the patent to cover just a two-legged  when the two-legged clip was shown in a prior art patent and then the claim was specifically amended to avoid the prior art to say no that there's a plurality of legs on at least one side. So I don't know that it's a validity but I think that it was a prosecution history and that was a very restful argument in that context. How would it ever secure the plastic if it was only on one side? Because you could have a hinge on the other side. I was trying to play with that myself. The patent shows quite clearly in the patent that there is a plurality of legs on at least one side because that's all the patent showed. That's all that the applicant could get out of the examiner because each of the drawings I think it's two four A figures two four A B and C all show two legs on one side of the clip. Two of the drawings show a third leg on the back but they don't show four legs ever. So you can't have a plurality of legs on both sides because the patent showed that in the prior art so what the applicant ended up getting out of this was a plurality of at least two legs extending from at least one side of the clip. I'm not sure what was said in the telephonic conference but I know what the result was and the result was this addition of this language that said it's got to be a plurality of legs extending on at least one side. So it could be two on one side or it could be one on either side. That's what the district court judge said but I disagree with that in view of the prosecution history. It can be two on one side and one on the other but it can't be one on each side. I take a little taken aback by that comment that Mr. Lowery made. I said that the district court had said it was grammatically but if that was correct you could parse that out grammatically it was legally and grammatically incorrect in view of the history of the district court. So I don't think that that is correct. I don't think that is correct. I don't think that is correct. I don't think that is correct. [...] on the account for patent infringement grounds the court entered judgment for the plaintiff on validity so it is argued that that has been resolved and words resolved the court gladly would you're talking about the 615 patent? I'm talking about the 615 because that one count was all the patent in the answer counterclaim answer was all of the patents in suit so the court entered judgment on that count in its entirety for ZIP Law with respect to the argument about it being springy to adjust the fit and this is really what happened with the district court and perhaps with this court is that there's an example with respect to figure 7E that talks about adjusting the fit where you pull down on a loop and you can move the pole and that is the compress and release aspect that is the compress and release embodiment if the court looks at column 7 beginning at line 39 there's a discussion with respect to figure 6 that talks about this extension loop embodiment and it says it's an alternative embodiment that again includes the preferred components which happen to be a spring yes a spring is the preferred component and then it says with respect to figure 7 this is what you could do with an embodiment that has that extension loop you could pull it down and do that it doesn't say that that's the only embodiment or that it has to be a spring or that you have to install it with respect to figure 7 for all of the claims that may ever issue now if the court looks at these claims there's no extension loop in these claims there isn't a dependent claim, claim 7 but there is no extension loop in the broad independent claim and what is more you could actually use an extension loop with a ratchet like device if you're going to adjust this pole you have to release it and you've got to pull the head down now you can pull it down with a loop or you can push it up into a ceiling but before you can take that pole down you have to shorten it and that can involve releasing and then ratcheting back up or otherwise with respect to bias to urge the head away a ratchet or a jack is biased to urge the head away when you activate it it moves the head that way that limitation is also met the amendment with respect to when under compression actually shows it's not a spring a spring pushes it away only when under compression when the words when under compression were moved it actually makes clear that they're not talking about a mechanism that's biased to push it that way only when under compression with respect to the meaning of compression being shortened yes that is a plain meaning of compression but like Philip says you need to look at the specification which says compressive force is the compressive force in the pole and that is generated by a compressive mechanism that pushes the head towards the ceiling whether it does so in a springy or a non-springy fashion I have a basic question maybe I'm just confused by looking at all these drawings of both devices your claim number one is a mount attachable to an extension pole so your device actually screws onto a painter's pole that the painter might use for a roller or any other type of pole it could be yes does the accused device is it attached to a pole at all? oh yes in fact in the pictures it shows the pole with the mounting and the ratcheting thing on top well I know but it looks like to me one piece no in fact they're different colors and I believe this is an infringement argument that was never articulated by the defendant so I don't have a lot on that in the record I realize that and that's what I wasn't able to and as one other point your honor as we submitted in the supplemental authority there are now actually published government documents a published patent application that calls the exact ratchet mechanism that's in the FastCap device it's an application by a company called Zepro it calls that mechanism a compression mechanism it's a ratchet it works exactly the same way that's merely a patent application it's true but it shows that the plain meaning is not exorbitantly going towards it's got to be a spring because others in the art don't call that wasn't before the district court no your honor I don't think that it actually hadn't published at the time it had been applied for long before the district court proceedings but it hadn't published as of the time of the district court proceedings but it's not part of the record before this court is it? it is in that we cited it as supplemental authority but it's not part of the and it's a published government document so I believe that we can't the court can take judicial notice of it but it was not something that was cited to the district court or considered by the district judge that is correct your honor thank you Mr. Cronin you have several minutes if you need it just a couple of things briefly on the 004 patent just to make my position probably more belabored than we need to make it but the prior art Villa Vesis patent which can be found at the joint appendix page 458 shows the use of two legs one extending on each side of a cliff in view of the prior art patent Villa Vesis as well as the claim language the patent and the drawings claim 35 of the 004 patent must be interpreted to require a cliff having no less than two legs extending from at least one side of the cliff and that this is exactly what is shown in figures 2, 4A, 4B and 4C of the 004 patent drawings and it's what is disclosed in that patent as a final matter on rebuttal I would just briefly like to address the supplemental authorities discussed by Mr. Lowery and object to those I don't believe that the Federal Circuit rule envisioned that published patent application as a supplemental authority I think it meant legal authorities but aside from that it's extrinsic evidence going to the issue of claim construction which should not be considered it was never considered by the trial court and it shouldn't be considered on appeal Thank you, Your Honor All right, we thank both counsel We'll take the appeal under advisement